IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                    Plaintiff,

     Vs.

                                        No.   04-40156-SAC

LAURA ANJENNETTE WETZEL-SANDERS,

                    Defendant.


MEMORANDUM AND ORDER

          In September of 2005, the court sentenced Ms. Wetzel-Sanders to

151 months for bank robbery. The sentence represented the bottom of

sentencing guideline range calculated under the applicable career offender

guidelines.   (Dk. 30). Though she took no appeal from the judgment of

conviction and sentence entered in October of 2005, Ms. Wetzel-Sanders has

filed several *pro se* post-conviction motions beginning in late 2009, and all of

these motions have been denied. (Dk. 33-42).

          The parties filed a joint motion pursuant to 28 U.S.C. § 2255 (Dk.

45) to vacate the defendant Wetzel-Sanders' sentence. The parties contend

the Tenth Circuit's recent decision, *United States v. Brooks*, 751 F.3d 1204,

1205-06 (10th Cir. 2014), establishes that the defendant's May 30, 2000,

Kansas conviction for criminal threat is not a felony as defined by the United

States Sentencing Guidelines as an "offense under federal or state law,

punishable by imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2(a). The parties conclude this court in relying on this state conviction as a felony under U.S.S.G. §§ 4B1.1 and 4B1.2(a) incorrectly sentenced the defendant as a career offender. The parties ask the court to vacate the sentence on this ground.

Concerning Ms. Wetzel-Sander's prior Kansas conviction, the parties attach as an exhibit the Shawnee County District Court of Kansas journal entry of judgment. It shows she pled guilty to the offense on April 12, 2000, and was sentenced on May 26, 2000. (Dk. 45-1, p. 1). It also states that the severity level for her offense was nine, her criminal history classification was H, and the sentencing range was eight to six months within the particular grid box. *Id.* The Kansas sentencing range is 5 to 17 months for an offense with a severity level of eight.

The attorneys filing this joint motion are also the attorneys who have filed a similar joint motion in the case of *United States v. Joseph V. Mulay*, No. 01-40033-01-SAC. Like Mr. Mulay, Ms. Wetzel-Sanders was convicted and sentenced prior to June 26, 2000, which is the retroactive application date of *Apprendi* by the Kansas Supreme Court in *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001), and prior to June 6, 2002, which is the date that Kansas implemented its new sentencing scheme discussed and applied by the Tenth Circuit in *United States v. Plakio*, 433 F.3d 692, 695 (10th Cir. 2005); *United*

*States v. Hill*, 539 F.3d 1213, 1215 (10th Cir. 2008); and most importantly, *United States v. Brooks*, 751 F.3d at 1206.

When it received the parties' joint motion to vacate pursuant to 28 U.S.C. § 2225 in *Mulay*, the court requested the parties to brief the application of *United States v. Brooks*, 751 F.3d at 1205-06, on a circumstance not addressed in their motion. Namely, Mr. Mulay's criminal threat conviction and sentence occurred in 1995 before the Kansas Sentencing Guideline scheme adopted in June of 2002 that was discussed in *Brooks* as the "unusual criminal sentencing scheme [that] lies at the heart of the current dispute," 751 F.3d at 1205. The parties filed a joint brief in *Mulay* taking the position that the holding and rationale in *Brooks* does "not turn on the date of the prior conviction" and that "there is no material difference between the Kansas sentencing scheme applicable in 1995 and the Kansas sentencing scheme applicable in 2002." The parties' filing did not address in any detail the Tenth Circuit precedent leading up to *Brooks*. Nor did it provide any explanation or construction of *Brooks* that incorporates the panel's opening statement about Kansas's "unusual" sentencing scheme. Presumably, counsel here would make the same arguments they made in Mr. Mulay's case in asserting that the date of the Kansas conviction is not significant in applying *Brooks*. Thus, the court will republish the balance of its legal analysis from its order filed under seal in Mr. Mulay's case.

Despite the parties' position that the date of the defendant's Kansas conviction is not significant in applying Brooks, the Tenth Circuit's decision indicates otherwise. It quotes how Kansas's adoption of a sentencing scheme in June 6, 2002, involved "new sentencing provisions" that "eradicate[d] the trial court's discretion to sentence a defendant to an upward departure." 751 F.3d at 1205-06.   It expressly fixes its holding within the parameters of "Kansas's rather unusual criminal sentencing scheme [that] lies at the heart of the current dispute." 751 F.3d at 1205-06. Should we expect that a court would open with such points about a unique sentencing scheme and the date of its adoption and not have a reason for doing so? On its face, the *Brooks* decision stands for an interpretation and application of the unusual sentencing scheme adopted in Kansas in June of 2002. The parties do not present any tenable arguments for construing *Brooks* as reaching back to an earlier sentencing scheme. The court believes this reading of *Brooks* is consistent not only with the Tenth Circuit decisions leading up to *Brooks* but also with the holding in *Brooks*.

The court will lay out that line of precedent below, but on this point, it is notable that the parties do mention in a footnote only one of those precedent, *United States v. Norris*, 319 F.3d 1278 (10th Cir. 2003). (Dk. 105, p. 4, n.1).The parties presume *Brooks* to have overruled some part of *Norris. Id.* It is certainly true that the panel in *Brooks* found the Supreme Court's intervening decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), to

have analysis that "contradicts and invalidates" the Tenth Circuit's analysis in
*United States v. Hill*, 539 F.3d 1213 (10th Cir. 2008). 751 F.3d at 1210.   The
*Brooks* panel, however, did not discuss any other Tenth Circuit precedent other
than *United States v. Plakio*, 433 F.3d 692 (10th Cir. 2005). *Hill* had overruled
*Plakio*, 539 F.3d at 1219-20, and *Brooks* now overrules *Hill* and "reverts back"
to *Plakio*, 751 F.3d at 1211. The decision in *Brooks* does not mention Tenth
Circuit precedent that had interpreted and applied the Kansas sentencing
scheme before June of 2002. It was not asked to and did not directly consider
the precedential force of that Tenth Circuit precedent which arguably
undergirds *Plakio*. Thus, the court will take a close look at Tenth Circuit
precedent and an even closer look at the rationale in *Brooks*.

**TENTH CIRCUIT PRECEDENT**

At the time when the defendant could have taken a direct appeal,
the Tenth Circuit had settled this issue regarding the effect of Kansas's
presumptive guideline sentencing scheme on the determination of whether a
Kansas offense of conviction was punishable in excess of one year. *See United
States v. Arnold*, 113 F.3d 1146, 1148 (10th Cir. 1997). The panel in *Arnold*
wrote:

> Appellant's prior conviction was for criminal possession of a
> firearm in violation of Kan. Stat. Ann. § 21-4204, for which he received
> a sentence of 11 months imprisonment. Under Kansas' sentencing
> scheme, appellant's conviction amounted to a severity level of eight. *See*
> Kan. Stat. Ann. § 21-4204(d) (1994 Supp.). As such, the maximum
> punishment was 23 months. *See Id.* § 21-4704(a) (1994 Supp.).
> Appellant acknowledges that the crime for which he was convicted
> carried a maximum possible punishment of 23 months. He argues,

however, that the sentencing court could actually only have given him a maximum sentence of 11 months when it took into account his limited criminal history, as it was required to do under Kansas law. *See* Kan.Stat.Ann. § 21-4704.

The appellant's argument fails because the Kansas state trial judge possessed the power to depart upward from the presumptive sentence based on aggravating factors.FN1 *See* Kan.Stat.Ann. § 21-4716(b)(2) (1994 Supp.); *United States v. Minnick*, 949 F.2d 8, 9-10 (1st Cir.1991) (holding that despite New Jersey statutory presumption against imprisonment for the crime in question, it qualified as "punishable by imprisonment for a term exceeding one year" since the sentencing court had discretion under certain circumstances to impose a term of incarceration exceeding one year); *United States v. Currier*, 821 F.2d 52, 58 (1st Cir.1987).

> FN1. Consideration of aggravating factors is discretionary with the trial judge, and the list of factors is expressly nonexclusive. Kan.Stat.Ann. § 21-4716(b)(2) (1994 Supp.). As a consequence, until actual imposition of sentence, appellant could not predict whether his sentence would exceed one year.

Appellant attempts to rewrite 18 U.S.C. § 922(g)(1) by converting the word "punishable" into "punished." What matters is not the actual sentence which the appellant received, but the maximum possible sentence. *See Currier*, 821 F.2d at 58; *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 113, 103 S.Ct. 986, 992, 74 L.Ed.2d 845 (1983) (finding it irrelevant whether the individual in question actually receives prison term when statute imposes disabilities on those previously convicted of crimes punishable by imprisonment for a term exceeding one year); *see also United States v. Place*, 561 F.2d 213, 215 (10th Cir.1977) (holding that defendant's actual sentence of only one year was irrelevant to question of whether court could have imposed longer sentence). This reflects the clear language of the statute, which imposes criminal liability on offenders who have previously been convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g) (emphasis added).

This court thus rejects the appellant's argument as to this first issue.

113 F.3d at 1148. Thus, the Tenth Circuit in *Arnold* recognized that the

statutory "possibility of upward departures qualified Kansas offenses as crimes

punishable by more than a year's imprisonment even where the maximum

presumptive sentence [under Kansas sentencing guidelines] was less than a

year." *United States v. Thomas*, 171 Fed. Appx. 250, 252, 2006 WL 679842 at

*1 (10th Cir. Mar. 17, 2006). This very same proposition was explicitly stated

by the United States Supreme Court in *United States v. Rodriquez*, 553 U.S.

377, 390 (2008):

> We conclude, however, that the phrase "maximum term of imprisonment . . . prescribed by law" for the "offense" was not meant to apply to the top sentence in a guidelines range.
>
> First, the top sentence in a guidelines range is generally not really the "maximum term . . . prescribed by law" for the "offense" because guidelines systems typically allow a sentencing judge to impose a sentence that exceeds the top of the guidelines range under appropriate circumstances. The United States Sentencing Guidelines, for example, permit "upward departures," see United States Sentencing Commission Guidelines Manual § 5K2.0 (Nov. 2007), and essentially the same characteristic was shared by all of the mandatory guidelines systems in existence at the time of the enactment of the ACCA provision at issue in this case.

553 U.S. at 390. This conclusion in *Rodriguez* is not addressed, interpreted, or

narrowed by the Supreme Court in *Carachuri-Rosendo*. The Tenth Circuit in

*Brooks* similarly does not deal with this conclusion in *Rodriguez*. With the

apparent alignment between the holding in *Arnold* and the stated conclusion in

*Rodriguez*, the Tenth Circuit panel in *Brooks* presumably would have lacked

the authority to overrule *Arnold* absent some other legal basis for doing so. The

parties offer the court no reason for believing this proposition in *Arnold* and

*Rodriguez* does not remain the controlling law when a sentencing guideline

system reserves to the sentencing judge the discretion for upward departures.

Indeed, the Tenth Circuit's subsequent decisions continued to

recognize the holding in *Arnold* and only distinguished it on the basis of a

change in the Kansas sentencing guideline system. *United States v. Plakio*, 433 F.3d 692, 695 (10th Cir. 2005); *United States v. Norris*, 319 F.3d 1278, 1281-82 (10th Cir. 2003). In *Plakio*, the panel wrote:

> <u>Ordinarily, the mere possibility of an upward departure (beyond one year) would render Plakio's conviction punishable by a term exceeding one year regardless of the actual sentence received</u>. *See United States v. Norris*, 319 F.3d 1278, 1281-82 (10th Cir. 2003) (holding the possibility of an upward departure under Kan. Stat. Ann. § 21-4719(b)(2) qualifies an offense as one punishable by imprisonment for a term exceeding one year for purposes of § 922(g)(1) even though defendant's maximum presumptive sentence was less than one year and no upward departure was imposed). However, on June 26, 2000, the United States Supreme Court rendered its decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Kansas Supreme Court presciently applied the principles laid down in *Apprendi* to limit the ability of Kansas courts to depart upward from the presumptive sentence under Kan. Stat. Ann. § 21-4716 (2000 Supp.). *Gould*, 23 P.3d at 814; *see also Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 2547 n. 1, 159 L.Ed.2d 403 (2004) (O'Connor, J., dissenting) (noting that the Kansas Supreme Court in Gould was the only state court, prior to *Blakely*, to apply *Apprendi* to invalidate application of its sentencing guidelines). Under *Gould* (and *Blakely*), upward departures cannot be based on judicial fact-finding. *Gould*, 23 P.3d at 814. *Gould* retroactively applied its invalidation of Kan. Stat. Ann. § 21-4716 (2000 Supp.) to June 26, 2000, the date *Apprendi* was decided. Id. at 814; *see Norris*, 319 F.3d at 1282. Thus, from June 26, 2000, until June 6, 2002, the date Kansas implemented its new sentencing scheme in Kan. Stat. Ann. § 21-4718 (2003 Cum.Supp.), sentences in Kansas were limited to the maximum presumptive sentence.
>
> Plakio's state sentencing occurred on May 9, 2001. Thus, Plakio argues that at the time of his sentencing, the maximum sentence he could receive was eleven months because the state court lacked the authority to depart from the guidelines and impose a higher sentence. The district court rejected this conclusion based on the principle of uniformity in sentences and a putative distinction between the felony analysis under § 922(g)(1) and § 2K2.1(a)(4)(A). Because the maximum sentence was twenty-three months, the district court deemed Plakio's prior conviction a felony for purposes of § 2K2.1(a)(4)(A). We disagree with the district court's analysis.
>
> Plakio's offense never qualified as a felony for purposes of the sentencing guidelines, regardless of state terminology, because he was

> never subject to a sentence greater than a year under Kansas law. We alluded to this conclusion in *Norris* where the defendant raised the same argument on appeal as Plakio. 319 F.3d at 1282. In *Norris*, however, we rejected the defendant's argument because his conviction became final before the date *Apprendi* was decided. *Id.* at 1283. However, we suggested in dicta that "[h]ad [the defendant's] state convictions become final after June 26, 2000, we would have before us a very different case." *Id.* Plakio now presents that case and we give effect to the logic of *Norris.* Because the sentencing court could not have imposed a sentence greater than one year, Plakio's state conviction was not a felony for the purposes of the federal sentencing guidelines. *Cf. United States v. Place*, 561 F.2d 213, 215 (10th Cir. 1977) (stating the relevant inquiry under § 922(g) is whether the district court "could have imposed" a longer sentence).

433 F.3d at 695 (underlining added). Later in their decision, the panel in *Plakio* reiterated the holding in *Arnold* as "focused on the sentence that **could** have been imposed" and recognized that the defendant's criminal history became part of the "punishable" equation only "after the Kansas court eliminated the departure power." 433 F.3d at 697 (bolding in original).   The balance of the discussion in *Plakio* about the role of criminal history in the Kansas sentencing scheme is set within this later context of no departure power in the sentencing court. Implicit in all of these decisions is that "punishable" as a concept is the statutorily authorized range of punishment that the sentencing court could have considered in the exercise of its full sentencing authority, including upward departures, for the offense of conviction.

Less than three years later, another panel of the Tenth Circuit on reconsideration overturned *Plakio. See United States v. Hill*, 539 F.3d 1213 (10th Cir. 2008). The *Hill* court found that a defendant's 2005 Kansas conviction for a level VIII felony offense with a sentencing range of 7 to 23

months was punishable by imprisonment exceeding one year even though the

defendant's presumptive sentence range was 9 to 11 months and the state had

not sought an upward departure. 539 F.3d at 1214. In the decision, the Tenth

Circuit included a description of the Kansas sentencing scheme prior to the

Kansas Supreme Court's decision in *Gould* which retroactively applied

*Apprendi* to June 26, 2000:

> Prior to 2001, a Kansas court was instructed to impose the presumptive
> sentence provided by the Kansas sentencing guidelines, "unless the
> judge [found] substantial and compelling reasons to impose a
> departure." Kan. Stat. Ann. § 21-4716(a) (1995). A court could consider
> aggravating factors and depart based on its own discretion. Id. §
> 21-4716(b)(2) (1995). The non-exclusive list of aggravating factors
> included, inter alia, considerations such as the vulnerability of the victim,
> excessive brutality, racial or religious motivations, and whether a
> fiduciary relationship existed between the defendant and the victim. Id.
> § 21-4716(b)(2)(A)-(G) (1995).

*Hill*, 539 F.3d at 1215. The panel also noted that prior to *Apprendi* the Tenth

Circuit's holding in *Arnold* was "that because the state court had the power to

depart upward from the presumptive sentence based on aggravating factors,

the crime for which he was punished carried a possible punishment of

twenty-three months." 539 F.3d at 1216.

The *Hill* panel then noted the changes to the Kansas sentencing

scheme with the *Gould* decision and the later 2002 amendments by the Kansas

legislature. *Id*. at 1215-16. It recognized that under the Kansas post-2002

guideline system a sentencing court could not depart upward on facts unless

they were submitted to a jury and proved beyond a reasonable doubt and that

no such facts were alleged or proved against Hill. *Id*. at 1218. The panel also

discussed its prior decisions and *Plakio's* recent approach that focused on the individual defendant taking into account the individual defendant's criminal history category. 539 F.3d at 1216-17. The panel concluded, "the focus in *Arnold*, *Norris*, and *Plakio* was on the maximum sentence to which the *individual* defendant was exposed." 539 F.3d at 1217 (italics in original). It summarized the individual defendant approach to mean that the "punishable" term of a Kansas offense of conviction was the presumptive grid sentence when the sentencing court "lacked the authority to depart upward" but was "greater than his presumptive grid sentence" when the sentencing court had the authority to depart upward. *Id.* at 1218. The court in *Hill* concluded, however, that its precedent's focus on the individual defendant was "misplaced and contrary to the structure of § 922(g)(1)" and had been "rejected" by the Supreme Court in *Rodriquez*. 539 F.3d at 1218.

The panel contrasted this individual defendant approach with the structure and terms of 18 U.S.C. § 922(g) which evidenced a crime-centered orientation, not a defendant-oriented approach. 539 F.3d at 1218-19. The *Hill* panel did not overrule *Plakio* just on its interpretation of § 922(g)'s structure, but it found that the Supreme Court's holding in *Rodriquez* also overrules the defendant-oriented approach. 539 F.3d at 1219-20.  The court summarized the Supreme Court's holding:

> In *Rodriquez*, the Supreme Court examined whether a prior state conviction carried a "maximum term of imprisonment of ten years or more" based on a recidivism enhancement. *Id.* at 1787. . . .

The question became whether any of the Washington state drug convictions satisfy the requirements of the ACCA. The Washington drug offenses carried with them a penalty of "imprison[ment] for not more than five years." *Id.* at 1786. A separate Washington recidivism provision, however, provided that "any person convicted of a second or subsequent offense could be imprisoned for a term of up to twice the term otherwise authorized." *Id.* (quotation and alteration omitted). The government argued that because Rodriquez was a recidivist (i.e., had three drug convictions) he thereby faced ten years' imprisonment on at least two of the prior drug convictions and these convictions could be counted under the ACCA. *Id.* at 1787. The government argued that because Rodriquez was a recidivist (i.e., had three drug convictions) he thereby faced ten years' imprisonment on at least two of the prior drug convictions and these convictions could be counted under the ACCA. *Id.* at 1787. The Ninth Circuit disagreed, holding "the maximum term of imprisonment ... prescribed by law must be determined without taking recidivist enhancements into account." *Id.* at 1786 (quotation omitted). The Supreme Court reversed, holding the calculation of the "maximum term of imprisonment ... prescribed by law" included the term imposed by applicable recidivist statutes. *Id.* at 1793. In doing so, the Court explicitly rejected the proposition "that mandatory guidelines systems that cap sentences can decrease the 'maximum term of imprisonment.'" *Id.* at 1792.

539 F.3d at 1217-18.

Before the Supreme Court, Rodriquez had argued by analogy "if recidivism enhancements can increase the 'maximum term' of imprisonment under ACCA, it must follow that mandatory guidelines systems that cap sentences can decrease the 'maximum term' of imprisonment." 553 U.S. at 390. The Supreme Court rejected this argument concluding that, "the phrase 'maximum term of imprisonment prescribed by law' for the 'offense' was not meant to apply to the top sentence in a guidelines range." *Id.*; *see Hill*, 539

U.S. at 1220.[1] The court in *Hill* further observed that the Supreme Court in *Rodriguez* had distinguished precedent in which the operative provision "clearly focuses on the circumstances of the particular juvenile and not on the offense." 553 U.S. at 393; *see Hill*, 539 U.S. at 1220. The *Hill* panel concluded:

> Section 922(g)(1), like the statute explored in *Rodriquez*, demands that courts focus on the maximum statutory penalty for the offense, not the individual defendant. Hill was convicted of violating Kan. Stat. Ann. § 21-4204, a severity level VIII crime in Kansas. Because that crime carries a maximum penalty of twenty-three months' imprisonment, he was convicted of "a crime punishable by imprisonment for a term exceeding one year."

539 F.3d at 1221. *Hill* was the precedent in this circuit for almost six years.

### UNITED STATES V. BROOKS

The Tenth Circuit's latest effort to classify a Kansas offense of conviction as punishable by imprisonment exceeding one year is what brings this case before the court now. As already discussed above, the *Brooks'* decision opens by acknowledging that "Kansas's rather unusual criminal sentencing scheme lies at the heart of the current dispute" and that "Kansas criminal statutes do *not* contain explicit maximum penalties." 751 F.3d at 1205. The panel says it does "not quibble with *Hill's* description of Kansas's

---

1 Notably, in rejecting this argument, the Supreme Court in *Rodriguez* recognized a distinction between the recidivism enhancement in its case and the more common guideline range computation that is based in part on criminal history. This distinction is not addressed either in *Carachuri-Rosendo* or in *Brooks.*

sentencing parameters" and then quotes only *Hill's* summary of Kansas's

sentencing scheme after 2002:[2]

> "[t]he determination of a felony sentence [in Kansas] is based on two factors: the current crime of conviction and the offender's prior criminal history. The Kansas sentencing guidelines employ a grid, which is a two-dimensional chart.[FN1] The grid's vertical axis lists the various levels of crime severity, ranging from I to IX for non-drug offenses. The horizontal axis is the criminal history scale, which classifies various criminal histories. To determine an offender's presumptive sentence, one must consult the grid box at the juncture of the severity level of the crime for which the defendant was convicted and the offender's criminal history category....
>
> > FN1. The chart for non-drug offenses is attached to this opinion. See Appendix; cf. Kan. Stat. Ann. § 21–6804 (2013) (statutory basis for the chart).
>
> On June 6, 2002, Kansas adopted new sentencing provisions ... eradicat[ing] the trial court's discretion to sentence a defendant to an upward departure [from the presumptive sentence] based on aggravating factors. Instead, upward departures are permitted where by unanimous vote, the jury finds beyond a reasonable doubt that one or more specific factors exist that may serve to enhance the maximum sentence. The state must seek an upward departure sentence not less than thirty days prior to trial. The court must then determine if any facts or factors that would increase the sentence beyond the statutory maximum need to be presented to the jury and proved beyond a reasonable doubt. As a consequence, upward departures are ... constitutional in Kansas, but they require new procedures and a jury finding.

*Brooks*, 751 F.3d at 1205-06 (quoting *Hill*, 539 F.3d at 1215-16). The panel

summarized its holding in *Plakio* that under Kansas's post-*Apprendi* sentencing

scheme the state conviction was not a felony "'[b]ecause the [state]

sentencing court could not have imposed a sentence greater than one year" as

---

2 As noted above, *Hill* also summarized the Kansas guideline sentencing scheme that existed before 2001 and before the effect of *Apprendi*. 539 F.3d at 1215-16. There is nothing in *Brooks* to indicate that it "quibbles" with *Hill's* description of the earlier Kansas sentencing parameters, for *Brooks* does not express any concern with the Kansas system before 2002.

calculated by focusing on the particular defendant and his criminal history category. *Brooks*, 751 F.3d at 1206.

The panel next summarized the holding in *Carachuri-Rosendo*. The issue there was whether one of the defendant's two drug misdemeanor Texas convictions was an "aggravated felony" under the Immigration and Nationality Act ("INA"), "a determination that ultimately hinged on whether the crime allowed for a 'maximum term of imprisonment' of 'more than one year.'" 751 F.3d at 1207 (quoting *Carachuri-Rosendo*, 560 U.S. at 566-67).[3] The panel then summarized the Supreme Court's reasons for rejecting the government's "hypothetical approach." The Supreme Court's rejection of this approach is best summarized in this quotation from *Carachuri-Rosendo*:

> Third, the Court of Appeals' hypothetical felony approach is based on a misreading of our decision in *Lopez*. We never used the term "hypothetical" to describe our analysis in that case. We did look to the "proscribe[d] conduct" of a state offense to determine whether it is "punishable as a felony under that federal law." 549 U.S. at 60, 127 S.Ct. 625. But the "hypothetical approach" employed by the Court of Appeals introduces a level of conjecture at the outset of this inquiry that has no basis in *Lopez*. It ignores both the conviction (the relevant statutory hook), and the conduct actually punished by the state offense. Instead, it focuses on facts known to the immigration court that could have but did not serve as the basis for the state conviction and punishment. As

---

3 The government in *Carachuri-Rosendo* argued that the defendant could have been prosecuted in state or federal court for a felony on the second offense and received a sentence greater than one year. The prosecutor would have had to charge the prior offense either before trial or before the plea, for the enhanced punishment to have been applicable to the second simple possession offense. 560 U.S. at 568-69. This had not been done. The Supreme Court noted that the lower court had employed the "hypothetical approach" as in the "hypothetical-federal-felony approach" looking at "any conduct that hypothetically could have been punished as a felony." 560 U.S. at 573 (internal quotation marks and citations omitted).

> the Sixth Circuit has explained, this approach is really a "'hypothetical to a hypothetical.'" *Rashid v. Mukasey*, 531 F.3d 438, 445 (2008). Not only does the Government wish us to consider a fictional federal felony—whether the crime for which Carachuri–Rosendo was actually convicted would be a felony under the Controlled Substances Act—but the Government also wants us to consider facts not at issue in the crime of conviction (*i.e.*, the existence of a prior conviction) to determine whether Carachuri–Rosendo could have been charged with a federal felony. This methodology is far removed from the more focused, categorical inquiry employed in *Lopez*.

560 U.S. at 580. The Supreme Court recognized the hypothetical aspect involved in determining whether conduct generally prohibited by a particular state statute is punishable as a felony under federal law, but it denied that this approach also opened the door to hypothesizing conduct that "could have" been prosecuted to state conviction and then using it for the first hypothetical determination. The Supreme Court had already rejected the notion of a different court later in time making a recidivist finding based on facts on which there was no conviction:

> Indisputably, Carachuri–Rosendo's record of conviction contains no finding of the fact of his prior drug offense. . . . Although a federal immigration court may have the power to make a recidivist finding in the first instance, *see, e.g., Almendarez–Torres v. United States*, 523 U.S. 224, 247, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), it cannot, ex post, enhance the state offense of record just because facts known to it would have authorized a greater penalty under either state or federal law. Carachuri–Rosendo was not actually " convicted," § 1229b(a)(3), of a drug possession offense committed "after a prior conviction . . . has become final," § 844(a), and no subsequent development can undo that history.

560 U.S. at 576-77 (footnotes omitted). In the footnote on this last point that a court cannot undo a conviction history, the Supreme Court addressed the governments' effort to apply *Rodriguez* noting:

To the extent that *Rodriquez* is relevant to the issue at hand, we think the contrary is true. In that decision we considered whether a recidivist finding under state law that had the effect of increasing the "maximum term of imprisonment" to 10 years, irrespective of the actual sentence imposed, made the offense a "serious drug offense" within the meaning of 18 U.S.C. § 924(e)(1) and therefore an ACCA predicate offense. 553 U.S. at 382, 128 S.Ct. 1783. We held that a recidivist finding could set the "maximum term of imprisonment," but only when the finding is a part of the record of conviction. Id., at 389, 128 S.Ct. 1783. Indeed, we specifically observed that "in those cases in which the records that may properly be consulted do not show that the defendant faced the possibility of a recidivist enhancement, it may well be that the Government will be precluded from establishing that a conviction was for a qualifying offense." *Ibid.* In other words, when the recidivist finding giving rise to a 10–year sentence is not apparent from the sentence itself, or appears neither as part of the "judgment of conviction" nor the "formal charging document," *ibid.*, the Government will not have established that the defendant had a prior conviction for which the maximum term of imprisonment was 10 years or more (assuming the recidivist finding is a necessary precursor to such a sentence).

*Carachuri-Rosendo*, 560 U.S. at 577 n. 12. The Tenth Circuit reads this quoted

footnote as clarifying *Rodriguez* that "'a recidivist finding could set the

"maximum term of imprisonment," but only when the finding is part of the

record of conviction.'" 751 F.3d at 1208 (quoting *Carachuri-Rosendo*, 560 U.S.

at 577 n. 12).

In *Rodriguez*[4], the Supreme Court was looking at whether the

defendant "faced <u>the possibility</u> of a recidivist enhancement in connection with

---

4 Rodriguez was convicted under one Washington statute but a separate statute included recidivist enhancement provisions for a second drug offense. The Court remarked that on the state charges the defendant faced the recidivist provisions and "[t]he judgment of conviction . . . listed the maximum term of imprisonment" based on the recidivist provision. 553 U.S. at 381. The Court in *Rodriguez* rejected the argument that recognizing a recidivist enhancement provision as part of the "maximum term" is the same thing as

a past state drug conviction," *Rodriguez*, 553 U.S. at 388 (underlining added). In *Carachuri-Rosendo*, the Supreme Court rejected a federal immigration judge's authority "to apply his own recidivist enhancement after the fact," when the immigrant "was not actually convicted of a crime" that included this prior conviction. 560 U.S. at 578-79. It was not possible for the immigrant to have been so convicted because the prosecutor had not filed those charges or pursued that notice and complied with all other procedural requirements attending the operation of the recidivist enhancement provisions. *Id*. In both cases, the Court was looking at how the operation of separate recidivism enhancement provisions, the charging of which was committed to a prosecutor's exercise of discretion, would impact the determination of a "punishable" term of imprisonment. The Tenth Circuit in *Brooks* takes the Court's general approach and comments about these separate recidivism enhancement provisions for which charges and findings would necessarily be a part of the record of conviction and interprets them as applicable to the Kansas's criminal history classification which is a regular, almost perfunctory part of every guideline range calculation. The panel held:

> In short, in *Hill* we interpreted *Rodriguez* to mean the most severe recidivist increase possible always applies when calculating a maximum sentence, whereas the Supreme Court has now interpreted Rodriquez to mean a recidivist increase can only apply to the extent that a particular defendant was found to be a recidivist. This makes all the difference in the world to our Defendant, who was saddled by the district court with the guideline range merited by the worst recidivist imaginable even

recognizing "the top sentence in a guideline range" which is based in part on a criminal history calculation. 553 U.S. at 390.

though his own recidivism did not allow for imprisonment of more than one year. Under *Rodriquez* via *Hill* Defendant is a career offender; under *Rodriquez* via *Carachuri–Rosendo*, he is not.

Based on *Carachuri–Rosendo*, our interpretation of *Rodriquez* in *Hill* was incorrect. This incorrect interpretation was pivotal to our holding in *Hill* that, in determining whether a prior Kansas crime was punishable by more than a year in prison, we must "focus on the maximum statutory penalty for the offense, not the individual defendant." *Hill*, 539 F.3d at 1221 (emphasis added). Thus, we must reverse the district court here and hold that *Carachuri–Rosendo* contradicts and invalidates *Hill*. Under Kansas law, Defendant could not have been sentenced to more than seven months in jail for his eluding conviction. That conviction, therefore, did not qualify as an "offense punishable by … imprisonment for a term exceeding one year." U.S.S.G. § 4B1.2 cmt. app. n. 1. As such, Defendant should not have been labeled a career offender under the Guidelines because he only had one "prior felony conviction[ ] of either a crime of violence or a controlled substance offense," whereas two such convictions are required. Id. § 4B1.1(a). To summarize, *Hill* no longer controls, and we revert back to our prior precedent on this point.

751 F.3d at 1210-11 (footnotes omitted). Apparently persuaded more by the general semblance between finding a prior conviction for a recidivism enhancement provision and a prior conviction for a criminal history score than by the procedural and legal differences that distinguish the unique operation of separate recidivism enhancements from common guideline criminal history scoring, the *Brooks* panel overruled *Hill* and returned to "prior precedent on this point." *Id.*[5]

---

5 The Tenth Circuit is not alone in doing so. *See United States v. Haltiwanger*, 637 F.3d 881 (8th Cir. 2011) (J. Beam, dissenting); *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (*en banc*, 8-5 vote). In *Simmons*, the court does address *Rodriquez's* comment about the top of the guidelines range being different from a recidivist enhancement. The Fourth Circuit distinguished *Rodriquez* based on North Carolina's Structured Sentencing Act which denies a sentencing judge any authority to impose a sentence greater than the top of the guideline range. Thus, *Simmons* supports the conclusion that nine months is not the punishable term of imprisonment for Mulay's prior conviction.

In sum, the Tenth Circuit in *Brooks* has reverted back to *Arnold,*
*Norris,* and *Plakio* and to the individual defendant approach which *Hill* had
overruled. This revived precedent was summarized both in *Hill* and *Plakio*, and
both decisions fully and explicitly stated the holding in *Arnold*. *Hill*, 539 F.3d at
1216 (In *Arnold*, "because the state court had the power to depart upward
from the presumptive sentence based on aggravating factors, the crime for
which he was punished carried a possible punishment of twenty-three
months."); *Plakio*, 433 F.3d at 694 (*Arnold* "holding the possibility of an
upward departure from a presumptive eleven month sentence rendered the
offense a felony for purposes of § 922(g)." In reverting back, the *Brooks*
decision does not change Tenth precedent on what is the punishable term of
imprisonment under the Kansas guideline system prior to June 26, 2000, when
the sentencing court did have the statutory authority to depart upward. Other
than *Hill* in rejecting *Arnold* for its individual defendant approach, no Tenth
Circuit precedent has questioned or overruled *Arnold*, but only distinguished it
on the basis of subsequent changes caused by *Apprendi* and the Kansas
Legislature in 2002.

Based on the above analysis, the court concludes that *Brooks* has
not overruled *Arnold* which remains the controlling precedent in deciding
whether Wetzel-Sanders's prior Kansas conviction is a felony. Under Kansas's
sentencing scheme, her conviction amounted to a severity level of nine, and
the maximum punishment was 17 months. *See Arnold*, 113 F.3d at 1148. By

statute, the sentencing judge "possessed the power to depart upward from the presumptive sentence based on aggravating factors." *Id.* As a result, 17 months is "the maximum possible sentence." *Id.* What matters is the statutory existence of this discretion to depart upward, not the exercise of it,[6] and not the presence of arguable factors. This is the conclusion firmly established by Tenth Circuit precedent to which *Brooks* reverted. This court does not have prerogative or authority to overrule or rewrite Tenth Circuit precedent. The court has not been presented with any viable or tenable grounds for concluding that *Arnold* has been overruled.

Rule 11 of the Rules Governing Section 2255 Proceedings requires a district court to issue or deny a certificate of appealability upon entering a final adverse order. Such a certificate "may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the applicant to demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). Because this issue arises in a fluid area of Tenth Circuit law, it is worthy of more consideration. The court will issue a certificate of appealability for this order.

---

6 The guidelines define "felony" as an offense "punishable by . . . imprisonment for a term exceeding one year . . . <u>regardless of the actual sentence imposed</u>." U.S.S.G. § 4B1.2, comment. (n.1). (underlining added).

IT IS THEREFORE ORDERED that the parties' joint motion pursuant to 28 U.S.C. § 2255 (Dk. 45) to vacate the defendant Wetzel-Sanders's sentence is denied.

IT IS FURTHER ORDERED that a certificate of appealability on this ruling is granted.

Dated this 30th day of October, 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge